IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *v.* | : | CRIMINAL NO. |
| | : | 1:13-cr-108-WSD |
| JOHNATHON KELLY | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Richard S. Moultrie, Jr. and Susan Coppedge, Assistant United States Attorneys for the Northern District of Georgia, and submits the following Sentencing Memorandum. In its Sentencing Memorandum, the Government urges the Court to deny Defendant Jonathan Kelly's objections to the probation officer's application of a two-level enhancement for undue influence of a minor under Section 2G1.3(b)(2)(B) of the Guidelines, and assessment of one criminal history point under Sections 4A1.1(c) and 4A1.2(c)(1) of the Guidelines, based on the Defendant's prior sentence of 34 days of incarceration for driving without a license.

# I.
# INTRODUCTION

The Court should deny Defendant Jonathan Kelly's ("Kelly") objection to the probation officer's application of a two-level enhancement for undue influence of

1

a minor under Section 2G1.3(b)(2)(B) of the Guidelines. Several reasons support the application of this specific offense characteristic in Kelly's case. First, Kelly does not dispute that he was at least 10 years older than R.W. at the time that he transported her for prostitution. Therefore, a rebuttable presumption exists under Section 2G1.3(b)(2)(B) that Kelly's influence over R.W. compromised her voluntariness. Second, after R.W. left Kelly to return to her family in Birmingham, Alabama, Kelly pressured her to return to him. Kelly told R.W. that she needed to earn money to pay the costs related to a bond that resulted from his arrest in Louisiana after R.W. reported him to law enforcement officers. So Kelly drove to Birmingham and returned with R.W. to Georgia, after which he quickly began exploiting her again. He also kept all of R.W.'s earnings. Third, R.W. witnessed occasions on which Kelly physically assaulted some of the adult women who he caused to engage in prostitution. Taken together, these facts support the probation officer's application of this enhancement.

Additionally, the Court should deny Kelly's claim that the probation officer erroneously added one criminal history point to his criminal history score under Sections 4A1.1(c) and 4A1.2(c)(1) of the Guidelines, based on his prior, 34-day sentence of incarceration for driving without a license. The probation officer added the criminal history point because under the Guidelines, the offense of

driving without a license constitutes a "prior sentence" which, if resulting in a sentence of incarceration of at least 30 days, produces one criminal history point under Section 4A1.1(c). Kelly insists that the Court should not assess a criminal history point for this conviction since, had he appeared for sentencing a week earlier, the Court would have imposed a sentence of time served for less than 30 days. But Kelly cites no factual or legal authority to support his argument. This Court, as a result, should deny the objection.

## II.
## PROCEDURAL BACKGROUND

**A. Indictment and Guilty Plea.**

On March 26, 2013, a federal grand jury seated in the Northern District of Georgia returned a two-count indictment that charged Kelly in Count One with Sex Trafficking of a Minor, in violation of Title 18, United States Code, Section 1591(a), and in Count Two with Transportation of a Minor for Prostitution, in violation of Title 18, United States Code, Section 2423(a). (Doc. 1.) On June 30, 2014, Kelly pleaded guilty to Count Two of the indictment. (Docs. 78, 78-1.)

**B. The Pre-sentence Report.**

On August 28, 2014, the United States Probation Office issued its *Final* Pre-sentence Investigation Report ("PSR") in Kelly's case. (PSR.) The PSR relied upon the 2013 edition of the United States Sentencing Guidelines Manual

("U.S.S.G." and the "Guidelines"). (PSR at ¶ 16.) The PSR determined that the applicable sentencing guideline was Section 2G1.3(a)(3) and that Kelly's base offense level is 28. (PSR at ¶ 17.) The probation officer recommended an upward adjustment of two levels for undue influence of a minor under Section 2G1.3(b)(2)(B). (PSR at ¶ 18.) The probation officer also applied a two-level upward adjustment for use of a computer to solicit a person to engage in prohibited sexual conduct with a minor under Section 2G1.3(b)(3)(B), and a two-level enhancement because the offense involved commission of a sex act. (PSR at ¶¶ 19, 20.) This resulted in an adjusted offense level of 34. (PSR at ¶¶ 47-67.) The probation officer then calculated a three-level downward departure based on Kelly's acceptance of responsibility under Sections 3E1.1(a) and (b), resulting in a total offense level of 31. (PSR at ¶¶ 26, 27.)

Finally, the PSR determined that Kelly's Criminal History Category is a Category IV. (PSR at ¶ 40.) The probation officer calculated Kelly's criminal history score of 8 by including a prior sentence of 34 days that resulted from a June 17, 2011, conviction for driving without a license. (PSR at ¶¶ 36, 40.) Thus Kelly's custody Guidelines range is 151 to 188 months. (PSR at Part D, "Sentencing Options.")

## III.
## BRIEF STATEMENT OF THE CASE

On January 9, 2013, GBI Special Agent Renea Green ("Agent Green") received a request for assistance from the Greene County Sheriff's Office concerning a possible child sex trafficking investigation. (PSR at ¶ 7.) Earlier that day, Georgia State Patrol Trooper Will Grier conducted a traffic stop of a car being driven by Kelly, and enlisted the assistance of Greene County Corporal Patrick Paquette ("Cpl. Paquette"). (PSR at ¶ 7.) Kelly was 29 years old at the time. (*See* PSR "Identifying Data".) Kelly's passenger, R.W., later determined to be 17 years old, appeared to Cpl. Paquette to be afraid of Kelly. (PSR at ¶ 7.) The officers searched Kelly's vehicle and found luggage containing female clothes, sex toys, condoms and lingerie. (PSR at ¶ 7.) After R.W. was separated from Kelly, she told Cpl. Paquette that Kelly had forced her to engage in prostitution. (PSR at ¶ 7.)

Later that night, Agent Green interviewed R.W. at the Taliaferro County Sheriff's Office. (PSR at ¶ 8.) R.W. stated that she met Kelly in June 2012, and, on Thanksgiving Day 2012, asked him to pick her up after she had an argument with her cousin, with whom she had been living. (PSR at ¶ 8.) Kelly picked R.W. up from a house in Birmingham, Alabama. (PSR at ¶ 8.) He then

transported her to a hotel in the Atlanta area, near Peachtree Industrial Boulevard.  (PSR at ¶ 8.)

At the hotel, Kelly introduced her to three adult women.  (PSR at ¶ 9.)  R.W. stayed at the hotel with Kelly and the women for three days, during which she began to suspect that Kelly was involved in prostitution based on, among other things, text messages she saw on his cellular telephone.  (PSR at ¶ 9.)  When she asked Kelly about the text messages, Kelly admitted to R.W. that "he had hoes." (PSR at ¶ 9.)  R.W. told Kelly that she would not work as a prostitute, to which he responded that he is a "money-maker," and that he "had a plan and if she loved him, she would do it."  (PSR at ¶ 9.)

According to R.W., Kelly told her that he was going to advertise her on *Backpage.com*.  (PSR at ¶ 10.)  Kelly took photographs of R.W. and used his cellular telephone to upload the advertisements to Backpage.   (PSR at ¶ 10.) Kelly subsequently took R.W. to hotels in the following locations: Stockbridge, GA; Macon, GA; Lithonia, GA; Augusta, GA; Lafayette, LA; Shreveport, LA; Bossier, LA; Arlington, TX; and Dallas, TX.  Kelly caused R.W. to engage in prostitution at all of these locations.  (PSR at ¶ 10.)  Kelly required that R.W. give all of the money she earned to him.  (PSR at ¶ 10.)  R.W. also witnessed Kelly's physical abuse of the other women who worked for him.  (PSR at ¶ 10.)

Case 1:13-cr-00108-WSD-JSA   Document 84   Filed 09/09/14   Page 7 of 16

On January 3, 2013, while at a hotel with Kelly in Shreveport, Louisiana, R.W. called the police to complain about Kelly hitting her. (PSR at ¶ 11.) When the police arrived, R.W. stated that Kelly had not struck her, but she wanted to collect her belongings and leave. (PSR at ¶ 11.) The police transported R.W. to the police station, but also arrested Kelly for possession of marijuana. (PSR at ¶ 11.) While at the police station, R.W. called her mother who purchased a bus ticket for R.W. to return to Birmingham. (PSR at ¶ 11.)

While in Birmingham, R.W. remained in contact with Kelly and later agreed to return to Georgia with him. (PSR at ¶ 12.) R.W. agreed to return to Georgia with Kelly because he kept telling her that she needed to earn money to pay the costs related to his bond for the marijuana charge in Louisiana. (PSR at ¶ 12.) According to R.W., Kelly drove her from Birmingham to a La Quinta hotel on Washington Road in Augusta, Georgia. (PSR at ¶ 12.) While at the hotel on January 8, 2013, Kelly used his cellular telephone to place advertisements of R.W. on *Backpage*. (PSR at ¶ 12.) Kelly caused R.W. to engage in sexual activity with him and to engage in acts of prostitution. (PSR at ¶ 12.) (Agent Green located the advertisement of R.W. on *Backpage* that had been placed by Kelly that day. (PSR at ¶ 12.))

Kelly was also interviewed on January 9, 2013, by GBI Special Agent Sara Thomas. (PSR at ¶ 13.) During the interview, Kelly admitted that there were photographs of R.W. in sexual poses on his cellular telephone, but he denied taking the photographs or uploading them to *Backpage*. (PSR at ¶ 13.) He did admit, however, that he knew that R.W. was only 17 years old. (PSR at ¶ 13.)

## IV.
## ARGUMENT AND CITATIONS OF AUTHORITY

### A. THE COURT SHOULD IMPOSE A TWO-LEVEL ENHANCEMENT OF KELLY'S BASE OFFENSE LEVEL UNDER U.S.S.G. SECTION 2G1.3(b)(2)(B) BECAUSE THE OFFENSE INVOLVED UNDUE INFLUENCE OF A MINOR.

The Court should enhance Kelly's base offense level for undue influence of a minor under Section 2G1.3(b)(2)(B), as applied in Paragraph 18 of the PSR. Kelly does not dispute that he was more than 10 years older than R.W. at the time that he transported her for prostitution. Therefore, a rebuttable presumption exists under Section 2G1.3(b)(2)(B) that Kelly's influence over R.W. compromised her voluntariness. Further, after R.W. left Kelly to return to her family in Birmingham, Kelly pressured her to return to him. Eventually, Kelly returned to Birmingham and drove R.W. back to Georgia, after which he quickly began advertising R.W. again on an internet website. Kelly also kept all of R.W.'s earnings. Additionally, R.W. witnessed occasions on which Kelly physically

assaulted some of the adult women who he caused to engage in prostitution. The Court, accordingly, should find that Kelly has failed to rebut the presumption that he exercised undue influence over R.W..

Section 2G1.3(b)(2)(B) of the Guidelines provides for a two-level increase "[i]f a participant . . . unduly influenced a minor to engage in prohibited sexual conduct." *Id*. Application Note 3(B) of Section 2G1.3(b)(2)(B) states that, "[i]n a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption" that the guideline provision applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and minor." U.S.S.G. § 2G1.3((b)(2)(B). cmt. n.3(B).

The enhancement advises Courts to "closely consider the facts of [a] case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3((b)(2)(B). cmt. n.3(B).[1] In deciding whether a defendant's conduct resulted in undue influence of a minor to commit commercial sex acts, a sentencing court "may look to a variety of factors, including whether [the defendant] display[ed] an abuse of superior

---

[1] A "participant" for purposes of this specific offense characteristic is defined as "a person who is criminally responsible for the commission of the offense." *See* U.S.S.G. §§ 2G1.3. cmt. n.1; 3B1.1. cmt. n.1(A).

knowledge, influence and resources." *United States v. Jones*, 546 F. App'x 946, 947-48 (11th Cir. 2013) (citing *United States v. Root*, 296 F.3d 1222, 1234 (11th Cir. 2002) (internal quotation marks omitted)); *United States v. Harrison*, 535 F. App'x 829, 831-32 (11th Cir. 2013).  The Eleventh Circuit, in *Jones*, also expressly found that the district court correctly applied the undue influence enhancement despite evidence that the minor victims had previously engaged in prostitution.  546 F. App'x at 947-48.  Specifically, the Court rejected the notion that "the *mere* fact that a minor has been involved in prostitution" foreclosed application of this enhancement.  *Id*. at 948.  (emphasis added).

The *Jones* Court also concluded that the 19-year-old defendant had exercised undue influence of the minor victims – ages 12, 14, and 15 years – by purchasing hair care products, jewelry, and makeup for them; persuading the 15-year-old girl that he loved her; keeping the minors' earnings; controlling the fees that they charged and the phones that they used for scheduling their dates; and beating them.  546 F. App'x at 948-47.

In *Harrison*, the Eleventh Circuit found that the defendant had evidenced undue influence of a minor victim through use of his "superior knowledge" and "superior resources."  535 F. App'x at 831-32.  The Court determined that the defendant's abuse of his superior knowledge was reflected by his: (1) knowledge

10

of computers and use of the internet to create ads depicting the victim; (2) directions to the victim on how to answer the phone and the fees to charge clients; and (3) instructions to the victim on where to take customers at the motels where he exploited her.  *Id*. at 831.  The Court reasoned that the defendant demonstrated an abuse of superior resources by his use of a laptop computer to advertise the victim; payment of the internet ads; purchase of items for the victim, including condoms; and transporting the victim from her home to locations where she engaged in prostitution.  *Id*.

As in *Jones* and *Harrison*, several factors support the application of this specific offense characteristic here.  First, Kelly does not dispute that he was at least 10 years older than R.W. during his transport of R.W. for prostitution.  Accordingly, a rebuttable presumption exists that his influence over R.W. compromised her voluntariness under Section 2G1.3(b)(2)(B).  Further, after R.W. left Kelly to return to her family in Birmingham, Kelly pressured her to return to him.  (PSR at ¶ 11.)  Kelly told R.W. that she needed to earn money to pay the costs related to a bond that resulted from his arrest in Louisiana after R.W. reported him to law enforcement officers.  (PSR at ¶¶ 11, 12.)  So Kelly abused his superior resource – his vehicle – to return to Birmingham and transport R.W. back to Georgia for the purpose of continuing to exploit her.  (PSR at ¶¶ 12.)   He

also kept all of R.W.'s earnings.  (PSR at ¶¶ 10.)    Additionally, R.W. witnessed occasions on which Kelly physically assaulted some of the adult women who he caused to engage in prostitution.  (PSR at ¶ 10.)  Taken together, these facts support the probation officer's application of this enhancement.

It is true that R.W. later stated to law enforcement officers that Kelly had not struck her at the hotel in Shreveport, Louisiana, or prior to the traffic stop on January 9, 2013, as Kelly argues in his objection.  *See* Defendant's Objection ("Def. Obj.") to PSR at p. 1.  In his objection, Kelly also references a letter that R.W. wrote to the GBI in which Kelly claims that R.W. indicated there was "no undue influence" because she had engaged in prostitution prior to meeting Kelly.  (Def. Obj. at p. 1.)

Specifically, R.W. wrote in the letter that, "I was not being held against my will" and that Kelly "wasn't [her] first pimp."  But Kelly fails to acknowledge that in the very same letter, R.W. described how Kelly began to threaten her after his arrest in Louisiana, and that she ultimately decided to return with him to Georgia because she "knew what he could do and what he would do." Moreover, the Eleventh Circuit has rejected the argument that a minor's prior sexual history is a basis for excluding this enhancement.  *See Jones*, 546 F. App'x at 947-48.  For all these reasons, the Court should find that Kelly has failed to

rebut the presumption that he exercised undue influence over R.W. that compromised her voluntariness under Section 2G1.3(b)(2)(B).

### B. THE COURT SHOULD DENY KELLY'S OBJECTION TO RECEIVING A SINGLE CRIMINAL HISTORY POINT BASED ON HIS PRIOR SENTENCE FOR DRIVING WITHOUT A LICENSE.

Additionally, the Court should deny Kelly's objection to receiving a criminal history point under Sections 4A1.1(c) and 4A1.2(c)(1) for his prior, 34-day sentence of incarceration for driving without a license. U.S.S.G. § 4A1.2(c)(1). On June 17, 2011, Kelly was sentenced in DeKalb County to 34 days of imprisonment for driving without a license. (PSR at ¶ 36.) Based on this sentence, the probation officer added one criminal history point for a prior sentence under Section 4A1.1(c). U.S.S.G. § 4A1.1(c). The Guidelines count any "prior sentence" for driving without a license in calculating a defendant's criminal history score where a conviction for this offense results in a sentence of imprisonment of at least 30 days. *See* U.S.S.G. §§ 4A1.2(a) & 4A1.2(c)(1). Because Kelly received a sentence of imprisonment of 34 days for this conviction, the probation officer assessed one criminal history point.

But Kelly urges the Court to exclude this criminal history point. He argues that had he appeared for sentencing a week earlier, the Court would have imposed a sentence of time served for less than 30 days – thereby allowing him to avoid a prior sentence resulting in a criminal history point under the

Guidelines. Kelly, however, cites no factual or legal authority to support his argument. Nor can he do so, given that any determination about how the Court would have fashioned a sentence during an earlier sentencing hearing necessarily relies on pure speculation. This Court, as a result, should deny the objection.

## V.
## CONCLUSION

For all these reasons, the Court should deny Defendant Jonathan Kelly's objections to the probation officer's application of a two-level enhancement for undue influence of a minor under Section 2G1.3(b)(2)(B) of the Guidelines, and assessment of one criminal history point under Sections 4A1.1(c) and 4A1.2(c)(1), based on Kelly's prior sentence of 34 days of incarceration for driving without a license.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


/S/RICHARD S. MOULTRIE, JR.
RICHARD S. MOULTRIE, JR.
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 527275

*/S/SUSAN COPPEDGE*
SUSAN COPPEDGE
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 187251

600 U.S. Courthouse
75 Spring St., SW
Atlanta, GA  30303
404/581-6280 (Tel.)
404-581-6156 (Fax)

CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1C in Book Antiqua font, 13-point type.  This is to also certify that the undersigned has this date filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

>Brian Mendelsohn, Esq.
>Federal Defendant Program, Inc.
>Suite 1500, Centennial Tower
>101 Marietta Street, NW
>Atlanta, GA  30303

This 9th day of September, 2014.


>*/s/Richard S. Moultrie, Jr.*
>Richard S. Moultrie, Jr.
>Assistant U.S. Attorney
>Richard.Moultrie@usdoj.gov